IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-3280-D

| | | |
|---|---|---|
| RICHARD TOLBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DR. PATRICK CRAFT, | ) | |
| | ) | |
| Defendant. | ) | |

On November 22, 2024, Richard Tolbert ("Tolbert" or "plaintiff"), a federal inmate proceeding pro se and in forma pauperis, filed this action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against Dr. Patrick Craft ("Craft" or "defendant") [D.E. 1]. See [D.E. 6]. On February 4, 2025, the court reviewed the complaint and allowed the action to proceed [D.E. 13]. On February 7, 2025, the court denied Tolbert's motion requesting the appointment of counsel [D.E. 15].

On June 25, 2025, Craft moved to dismiss the complaint or, alternatively, for summary judgment [D.E. 23]. Because Craft attached materials outside the scope of the pleadings, the court construes the motion as requesting summary judgment. See Fed. R. Civ. P. 12(d). That same day, Craft moved to seal an exhibit [D.E. 27, 28]. The court notified Tolbert about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 29]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On August 18, 2025, Tolbert responded in opposition to the motion for summary judgment [D.E. 33] and attached a declaration and exhibits [D.E. 33-1, 33-2]. That same day, Tolbert moved for the appointment of

counsel [D.E. 32]. On August 20, 2025, the case was reassigned to the undersigned [D.E. 34]. On August 29, 2025, Craft replied to Tolbert's response in opposition [D.E. 35]. On September 3 and 15, 2025, Tolbert filed a sur-reply and additional documents [D.E. 36, 37]. As explained below, the court grants Craft's motion for summary judgment, denies Craft's motion to seal, and denies Tolbert's motion to appoint counsel.

I.

Tolbert is incarcerated at the Federal Medical Center in Butner, North Carolina ("FMC Butner"). See Def.'s Statement of Material Facts ("DSMF") [D.E. 25] ¶ 1.[1] Tolbert's allegations arise from time spent at the Federal Correctional Institution II in Butner, North Carolina ("Butner II"), where Tolbert began serving his sentence in summer 2021. See id. at ¶ 2. Tolbert alleges Craft violated the Eighth Amendment when he discontinued a "standing order" for Tolbert to receive antibiotics, causing Tolbert's "chronic multifocal osteomyelitis of right tibia to spread from his leg into his blood stream," which resulted in "acute kidney failure." Compl. [D.E. 6] 5.

Tolbert has a history of injury and surgery to his right leg. See [D.E. 36-1] 13–14. On January 25, 2021, Tolbert attended an appointment at Aurora Health Care in Milwaukee, Wisconsin, and a physician ordered "continue doxycycline 100 bid for life." Id. at 15. Tolbert's plan of care provided: "Continue doxycycline. He should follow-up with Dr. Syed regarding antibiotics. I suspect that he will need to be on lifelong suppression." Id. at 14. On August 9,

---

[1] A party's statement of undisputed material facts is "deemed admitted for purposes of the motion [for summary judgment] unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civ. R. 56.1(a)(2); see Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113, 2017 WL 1030706, at *1 n.1 (E.D.N.C. Mar. 15, 2017) (unpublished); Fed. R. Civ. P. 56(e)(2).

2

2021, a nurse completed a release summary for Tolbert while he was at the Kenosha County Jail in Kenosha, Wisconsin. See id. at 1. The nurse noted Tolbert had a prescription for doxycycline, which expired on November 4, 2021. See id. at 2.

From approximately August 2021 through March 2023, Craft was assigned as the primary treating physician for Tolbert at Butner II. See DSMF ¶ 8. On August 30, 2021, Registered Nurse Ashley Eddins and Physician's Assistant Brandon Wyche performed Tolbert's initial health screening. See id. at ¶ 11. The providers did not note any existing prescription for antibiotics, and did not indicate Tolbert stated he required a prescription for antibiotics. See id. On September 17, 2021, Craft and a mid-level provider ("MLP") performed Tolbert's initial history and physical examination in accordance with Federal Bureau of Prison ("BOP") policy. See id. at ¶ 12. Tolbert did not mention antibiotics at this appointment. See id. On September 21, 2021, Craft prescribed Tolbert oxcarbazepine for neuralgia and neuritis, and ordered x-rays of Tolbert's right fibula and tibia due to Tolbert's prior surgeries and wound to his right lower leg. See id. at ¶ 13. Craft also referred Tolbert for physical therapy. See id.

On September 13, 2021, Tolbert did not attend his scheduled physical therapy appointment. See id. at ¶ 14. On September 28, 2021, a nurse saw Tolbert in response to a sick call request, and Tolbert stated he needed to speak with his provider because he had not received a wheelchair or his medications since arriving at Butner II. See [D.E. 1-1] 26. The nurse told Tolbert he had been referred to physical therapy for a functional assessment for a wheelchair and noted Tolbert had not "reported to pill line for his medication." Id. The nurse told Tolbert to report to the pill line at the designated times for his medication. See id.

On October 5, 2021, Tolbert attended a physical therapy appointment. See DSMF ¶ 15. Tolbert reported numerous surgeries on his right leg due to repeat infections (osteomyelitis) and

3

hardware removal. See id. Tolbert also reported having spent almost two years in the hospital with wound vacs and antibiotic treatment. See id. Tolbert told the physical therapist he wanted antibiotics and stated he had been told he would have to take antibiotics forever. See id. Tolbert also informed the physical therapist that he was housed upstairs, but that he liked "doing the stairs" because he "wants to get stronger." [D.E. 33-1] 14. Upon examination, the physical therapist noted significant scarring throughout Tolbert's right lower leg due to skin grafts and prior surgeries. See DSMF ¶ 16. The physical therapist issued Tolbert a cane and scheduled him for additional physical therapy sessions to address glute and quad weakness. See id. The September 21, 2021 order for an x-ray was corrected to request an x-ray of Tolbert's right lower leg. See id. Tolbert continued physical therapy until December 2021. See id. at ¶ 17. On February 11, 2022, Tolbert was discharged from physical therapy. See id. at ¶ 19.

On March 8, 2022, medical staff notified Craft that Tolbert was noncompliant with his prescription for oxcarbazepine, which had been prescribed to treat Tolbert's nerve pain. See id. at ¶ 21. Craft had not seen Tolbert since their encounter on September 17, 2021. See id. at ¶ 20. On August 17, 2022, Craft noted Tolbert had been scheduled for a chronic care clinic appointment. See id. at ¶ 23. Craft, however, determined the appointment was unnecessary because Tolbert was not then prescribed any chronic care medications. See id.

On March 18, 2023, Tolbert reported to health services complaining of lower right leg pain, which began the prior evening and had continued to worsen. See id. ¶ at 24. Tolbert reported severe pain. See id. Tolbert brought January 2021 paperwork with him from a community medical provider, which stated he should be evaluated for lifelong antibiotic suppression for osteomyelitis, as well as a gabapentin disorder. See id. Health services did not note any sign of active injury or visible infection. See id. Tolbert was given Motrin and Tylenol for pain and prescribed diclofenac

4

sodium external gel for neuralgia and neuritis. See id. at ¶ 25. Tolbert was instructed to stay off his right leg and to follow-up with his primary care providers the following Monday. See id.

On March 20, 2023, the physician assistant evaluated Tolbert for pain in his right leg that had not improved. See id. at ¶ 26. The physician assistant noted no erythema, no apparent edema, no drainage in the area, no increased warmth, and that the skin was dry. See id. The physician assistant also noted Tolbert's skin was very tender to slight touch, but that deeper palpitation did not elicit a pain response. See id. The physician assistant prescribed an antibiotic for cellulitis, requested laboratory work, and requested an x-ray for possible chronic osteomyelitis. See id. at ¶ 27. Tolbert also was referred to physical therapy. See id.

On March 23, 2023, Craft and a physician assistant evaluated Tolbert, who presented with swelling in his right leg. See id. at ¶ 28. Craft prescribed Tolbert medication for cellulitis and ordered laboratory testing. See id. That same day, a physical therapist evaluated Tolbert and ordered an ultrasound of his right leg. See id. On March 24, 2023, medical staff received Tolbert's laboratory work, which suggested an acute kidney infection related to the infection in his right leg. See id. at ¶ 29. Tolbert was transported to the emergency department at the local hospital. See id.

Hospital staff diagnosed Tolbert with acute chronic osteomyelitis, an abscess in his right leg, and acute renal failure. See id. at ¶ 30. During the next several days, Tolbert underwent two right-lower-extremity debridement procedures and began a course of antibiotics. See id. Tolbert's kidney function improved. See id. On March 29, 2023, Tolbert was released from the hospital and was ordered to be on intravenous antibiotics for six weeks. See id. at ¶ 31. Tolbert was transferred to FMC Butner, and Craft no longer was involved with Tolbert's treatment. See id. at ¶ 32.

5

II.

A.

Tolbert renews his motion for appointment of counsel. See [D.E. 32]. There is no right to counsel in civil cases absent "exceptional circumstances." Jenkins v. Woodard, 109 F.4th 242, 247 (4th Cir. 2024); see Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa, 490 U.S. 296 (1989); Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances turns on "the type and complexity of the case, and the abilities of the individuals bringing it." Whisenant, 739 F.2d at 163 (citation omitted). A court must determine "(1) whether the plaintiff has a colorable claim and (2) considering the claim's objective complexity and the plaintiff's subjective abilities, whether the plaintiff lacks the capacity to present it." Jenkins, 109 F.4th at 247 (cleaned up). If the court answers both questions "affirmatively, the case presents exceptional circumstances." Id.

This case does not present exceptional circumstances. Tolbert has demonstrated through his filings that he has the capacity to present his claims. Thus, the court denies Tolbert's motion for appointment of counsel.

B.

Summary judgment is appropriate when the record as a whole reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the

allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

Tolbert alleges Craft was deliberately indifferent to Tolbert's serious medical needs in violation of the Eighth Amendment. To establish an Eighth Amendment claim for deliberate indifference to medical needs, "the plaintiff is required to prove an objective component and a subjective component." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019). The objective component requires a "serious" medical condition either "diagnosed by a physician as mandating treatment" or "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Short v. Hartman, 87 F.4th 593, 612 (4th Cir. 2023) (cleaned up), cert. denied, 144 S. Ct. 2631 (2024); see Farmer v. Brennan, 511 U.S. 825, 834 (1994); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). The subjective component "requires that the prison official acted with deliberate indifference to inmate health or safety, meaning that the official had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Short, 87 F.4th at 612 (cleaned up); see Langford v. Joyner, 62 F.4th 122, 124 (4th Cir. 2023).

No evidence in the record shows that Craft knew a community medical provider had recommended that Tolbert be evaluated for long-term antibiotic suppression therapy when Craft

7

examined Tolbert on September 17, 2021. While Tolbert mentioned his medical history, including his antibiotic treatment, to his physical therapist and expressed a desire for antibiotics on October 5, 2021, no evidence shows that Craft was made aware of such information at that time. Tolbert admits Craft had no knowledge of the prior medical order when Craft examined him in September 2021, but contends Craft's alleged failure to adequately review Tolbert's medical records was negligence. See [D.E. 33] 2. Negligence, however, is insufficient to establish a constitutional violation. See Estelle v. Gamble, 429 U.S. 97, 105–06 (1976).

To the extent Tolbert disputes Craft's determination that Tolbert did not require antibiotics following the September 21, 2021 physical examination, his claim amounts to nothing more than a disagreement over the proper course of treatment. See, e.g., Hixson v. Moran, 1 F.4th 297, 303 (4th Cir. 2021); Bridges v. Keller, 519 F. App'x 786, 787 (4th Cir. 2013) (per curiam) (unpublished); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Such a disagreement does not constitute an Eighth Amendment claim. See Hixson, 1 F.4th at 303. Moreover, there is no constitutional violation even if Craft did provide Tolbert with ineffective diagnoses and treatment. See Williams v. Branker, 462 F. App'x 348, 354 (4th Cir. 2012) (per curiam) (unpublished) ("Williams points to no authority for the proposition that the Eighth Amendment entitles him to effective treatment." (cleaned up)); see, e.g., Russell, 528 F.2d at 319. As stated, Craft's conduct, at most, could be construed as negligence, which does not give rise to a constitutional violation. See Estelle, 429 U.S. at 105–06. Thus, Tolbert cannot establish an Eighth Amendment violation. The court declines to address Craft's argument that he is entitled to qualified immunity. See Dist. of Columbia v. Wesby, 138 S. Ct. 577, 589 n.7 (2018).

To the extent Tolbert alleges in response to Craft's motion for summary judgment that Craft refused to renew a prior order for a wheelchair or failed to order a lower-tier, bottom bunk,

8

he cannot raise new claims in response to summary judgment without moving to amend his complaint. See, e.g., United States ex rel. Carter v. Halliburton Co., 866 F.3d 199, 210 n.6 (4th Cir. 2017); Murray Energy Corp. v. Adm'r of EPA, 861 F.3d 529, 537 n.5 (4th Cir. 2017); vonRosenberg v. Lawrence, 849 F.3d 163, 167 n.1 (4th Cir. 2017); S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184–85 (4th Cir. 2013); Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008) (per curiam) (unpublished) (citation omitted); see also Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th Cir. 2009); Cloaninger ex rel. Est. of Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009); Shinaberry v. Town of Murfreesboro, No. 2:17-CV-7, 2019 WL 5446712, at *5 n.4 (E.D.N.C. Oct. 23, 2019) (unpublished); United States ex rel. Graybar Elec. Co., Inc. v. TEAM Constr., LLC, 275 F. Supp. 3d 737, 748 n.3 (E.D.N.C. 2017). Even if Tolbert had moved to amend his complaint to include these new claims, the record reflects Craft referred Tolbert to a physical therapist for functional assessment and Tolbert informed his physical therapist that he liked "doing the stairs because he wants to get stronger." [D.E. 33-1] 14; see [D.E. 1-1] 26. After assessing Tolbert, the physical therapist issued Tolbert a cane and instructed him to consider the stairs "part of his rehab." [D.E. 33-1] 14. Thus, the record reflects the physical therapist, and not Craft, decided whether Tolbert required an assistive device or housing restrictions. Because Tolbert has not established that Craft violated the Eighth Amendment in connection with these new claims, the court dismisses them. See Farmer, 511 U.S. at 834–40; De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013); 28 U.S.C. § 1915(e)(2)(B)(ii).

C.

As for Craft's motion to seal, Craft seeks to seal an exhibit containing Tolbert's medical records. See [D.E. 28]. The court has reviewed the motion under the governing standard. See,

9

e.g., Doe v. Pub. Citizen, 749 F.3d 246, 272–73 (4th Cir. 2014). Craft cites Local Civil Rule 26.1(a)(1), which applies to materials filed in connection with discovery motions, not to exhibits filed in connection with a motion for summary judgment in a case in which the plaintiff has placed his own medical condition in issue. Cf. Local Civ. R. 79.2. Thus, the court denies the motion to seal.

III.

In sum, the court DENIES defendant's motion to seal [D.E. 28] and plaintiff's motion requesting the appointment of counsel [D.E. 32]. The court GRANTS defendant's motion for summary judgment [D.E. 23]. Any new claims Tolbert raised in response to Craft's motion for summary judgment are DISMISSED. The clerk shall close the case.

SO ORDERED. This 23 day of January, 2026.

JAMES C. DEVER III
United States District Judge